Good morning again, Your Honor. Barbara Stone for the EEOC. This case is the retaliation case, the kind of unusual retaliation case. The Court asked us to address 54B. Would you like us to start there? It's as good a place as any since it relates to jurisdiction. Okay. That's what we thought, too. That's why we raised it in our brief. The question, of course, for 54B, you have to have a final judgment, and there has to be no just cause for delay. A key factor on the second point is the interrelationship of the claims and whether there's a need for review the second time around. The Curtis Wright case was sort of an obvious one where a very small contract claim out of 21 was virtually undisputed, and the guy needed the money. So the Court said, okay, we'll enter judgment there. It can go forward. This other mess can keep going forward. It seems like straightforward 54B. Under the Wood case, by contrast, the claims were interrelated. It was an age case, not a complicated case. And this Court reversed, saying that it's not the norm to have a 54B and we'll have to revisit the same issues. We think the same is true in this case. The Court did go through the ruling, the factors, but we think it came to the wrong result. Let me ask you about that. When I read the trial court, he's basically saying, look, we have these nine-plus people over here, which I've entered a summary judgment. And I have this one trial hanging out here. So they're basically done. It's not like they're going to have another trial as a result of whatever happens with Aguila. So I hear him saying two things. One, this is long, complicated, and everybody agrees here that things are complicated. And he's saying that Mr. Aguila is really quite distinct because of the nature of the threat made directly to him, and that's very distinct from these other people. And also to the extent that I'm totally wrong about, for example, what happened with the two gentlemen hanging around, if there's going to be a reversal on that, then we would want to have a consolidated trial, obviously. Why isn't that in the realm of combining the Curtis, which is sort of both de novo and abuse of discretion, why isn't that a sufficient rationale? Well, all the claims, all ten of them, arise out of the same initial incident. And the facts do overlap, and we would be relying on Mr. Aguila to prove the claims with respect to the other claimants. So he'd be brought back anyway, assuming there were a reversal. And importantly, Your Honor, the agency issues here. Well, no, the way you want it, as I understand it, is to just basically put the summary judgment in the deep freeze, and his case is going to go forward, right? And the agency issues that are raised on appeal right now, if the Court had, they would be completely raised again. And even if the judgment were affirmed, he would, we couldn't raise Sudicata for us, or collateral estoppel, but he could. He could challenge the exact same agency rulings that are before the Court right here. In fact, he would be a critical witness, wouldn't he? He is a critical witness for us, in the nine claims. But your nine claims, I'm trying to understand what your objection is, because your nine claims are over. Well, we'd like to do that. I know you'd like to have them revived somehow, but they're over as far as the trial court is concerned. Is that true? That is true. Okay, so. We don't have any problem with factor number one. There's obviously a common issue with respect to those nine, is there not? The hearsay issue? Right. That is common, that's true. But that's dispositive of the nine, is it not? It is, but the agency issues that are also at issue here will resurrect when and if Mr. Aguila's claim goes forward. So tell me specifically what you're talking about there. Well, the issue of whether Mr. Marin was in fact liable, I mean, the Court basically X'd him out of the whole analysis here. And said, if there's any liability here, it only deals with Mr. Sanchez and Evan Sprute. But in fact, Mr. Marin should be still in the picture, and Mr. Aguila could come back in his appeal and say, well, I'm going to go ahead and appeal these issues with respect to Mr. Marin, because I think they are wrong. And he would be well within his right to do that. Let me just posit this for you. If a decision were made on the merits here, then you'd know the answer to Mr. Marin, right? Only with respect to us, but not with respect to him. But of course, he's different with respect to Mr. Aguila because of direct conversations. But you'd know the answer to the hanging around the school, the hearsay, et cetera. And to the extent that there were reversible errors there for you, then it would go back and have a single trial. And I'm very sympathetic with the District Court ruling that way. I mean, we have multiple claimants in a lot of our cases, and some of them get dismissed on appeal. I dig on in summary judgment, and it's not a 54B issue. So what you're saying is, let's just go have a single trial of Mr. Aguila. Because the agency issues. The chips will fall where it may, and then we'll come back up. And if we need to have a whole other trial, well then, okay, we'll have another trial. Well, it's kind of like wood in that regard, Your Honor, because the whole case would have been over if the Court had simply gone ahead and ruled on Mr. Aguila, had a trial on that. And we would be here all together. But you already just told us that he's different. Well, the agency issues with respect to Mr. Marin. Now, if Mr. Sanchez is the one who actually stated the threat, Mr. Marin is the harasser, the whatever. He's the head honcho here. And the issues with respect to him reoccur with Mr. Aguila because he's out of the analysis in Mr. Aguila. He's out of the analysis for us, but Mr. Aguila's claim is not final yet. There's no doubt that there are some differences, and there's no doubt there's some public policy reasons why you might want to decide this and continue with him. My concern is just the statutory requirement that it's improper to take an interlocutory appeal with some but not others if the ones left behind are strongly related. And if that's the predicate test you have to get over before you ever get to judgment and discretion and whether it's good policy or bad policy, if they're strongly related, you don't take interlocutory appeals. And I'm having trouble thinking that Aguila's claim is not strongly related because the threats that are alleged to be the intimidation for everybody essentially flow through, for the most part, Aguila. Well, we would agree with you, Your Honor. That's why we raised it, and we think that, for example, the harm that Mr. Aguila suffered also was suffered by his partner because he told her everything, and where he went, she went, and so did their kid. So you can't really separate her out, and Mr. Ambrosio has related things. It's like a single unitary claim here. We would prove our claim with Mr. Aguila if we were to go back. We think you should reverse because there's plenty of evidence that Mr. Marin was acting within the scope of his authority when he made the statements that he did to Mr. Marin, to Mr. Aguila, and that there's a lot of evidence that he, that would raise an inference that he and Mr. Sanchez were acting in concert. The court said, well, it's not an unlawful, but it is unlawful to combine together with the purpose of suppressing protected activity. That's very unlawful. So that's it. Thank you. I think it's time to hear from your co-counsel. Okay. Thank you. You have some rebuttal time, but as I understood it, you asked for eight minutes at the outset. We gave you nine. All right. Thank you. May it please the court. My name is Blanca Rodriguez. I am counsel for intervener plaintiffs, and there are four points that I want to make. First, the district court erred in holding that the plaintiffs had no admissible evidence of a threat. A threat is a verbal act, whether it is offered on behalf of someone who heard the threat or on behalf of someone who was threatened but did not hear the threat. Second, under Burlington Northern, the plaintiff's testimony about the threat relayed to them is admissible for the impact that it had on them. Third, the evidence establishes that Juan Marin and Alberto Sanchez, a loyal supervisor under Juan Marin, were engaged in an ongoing conspiracy to dissuade the plaintiffs from cooperating with the EEOC in its investigation of sexual harassment at Evans Fruit. Fourth, the photographing and spying of the plaintiffs while they were meeting with the EEOC, if viewed in the totality of the circumstances, establishes genuine issues of dispute of fact that preclude summary judgment. You know, on that point, the thing that's unusual about this case, at least for me, is that these claimants are not employees, and it's a lot easier to understand a threat that would be strong enough to persuade a normal person from pursuing their rights under the statute when they're employees, because there's that constant hang of employment retaliation. This seems to be the fact that they're out, and some of them have been out for many years. Isn't that an important distinction between this case and many of the other cases that we would normally run into on retaliation? Well, I would agree with Your Honor that this case is unique. I would definitely agree with that. But I would say that there's presidents like Robinson v. Schell that explain that you don't have to be a current employee. No, you surely don't. I mean, the law. All I'm saying is that the most common form of intimidation, which is your employment conditions, that we find in most retaliation cases is not present here. That's correct. What you do have here, Your Honor, though, is you have plaintiffs who are meeting with the EEOC about sexual harassment allegations that have been spruced. They were no longer working there, but that was the purpose of that meeting. And because of that, they— I guess on that point, the other thing that struck me as unusual here is that it's the plaintiffs that chose to meet in a public library in a small town, in a public room. I mean, they didn't—they could have chosen an EEOC office or a private law firm or all kinds of places, but they're the ones that chose the public location. Your Honor, but that doesn't mean that somebody has the right to photograph and spy on them and then report one to— Well, on photographs, there's only—I mean, there's a lot of dispute about that. There's only a couple of them that even—four, I guess, that said that they saw what they thought was the photograph. Isn't that correct? I believe that Gregorio Aguila saw them taking pictures. You know, even if you can meet in a public place, that doesn't mean somebody can threaten you as a result of seeing you meet in a public place. So could you address the specific issue on the threat? It seems there's two issues there. One, you'd have to show that these statements, Sanchez to Aguila, were actually made with the specific intent that they would have a downstream effect on other people. And I don't see any evidence of that, so I'd appreciate your comment on that. And then second, most of them didn't even know about it, and the ones that did hear about it are pretty well downstream by the time they get the information. Well, Your Honor, what you have to remember here is that the plaintiffs were meeting, and then Domingo Cuenca and Alvaro Rojas, crew leaders under Juan Marin at Evans Boot, they reported back to him. And then the very next day after Juan Marin learned about this, Alberto Sanchez called Plaintiff Gregorio Aguila, and he was very loyal to Juan Marin. He worked under him at Evans Boot, and he said that they were going to get even with anyone else that assisted and cooperated. And then Juan Marin himself, the following day, Juan Marin himself calls and he says, have you spoken to Alberto Sanchez? And then offers money and work in exchange for ‑‑ Now, that explains a lot as to Mr. Aguila. They're trying to make a secret deal, like basically they're trying to buy him off as an informant, let's just take the tax charitable to you. How does that affect the downstream as to the knowledge and specific intent regarding the plaintiff? Well, the intent wasn't just to chill Mr. Aguila, because he wasn't the only one who had information about the sexual allegation claims. The intent was to chill everybody, and so the intent was that the threat would be communicated so that that would stop the other plaintiffs from cooperating. And so all this evidence just shows that it was intentional, and so they were trying to recruit him to spite. But also the intent was that this would stop everybody else, and so that he would be brought back to everybody else so that everybody would be scared and they would stop. They would be dissuaded from participating in protected activity. And is that the theory under which you feel that you've established adverse action? That's the technical requirement that you have. Yes, I mean, I think that's one of the theories. The other theory is the surveillance itself can constitute adverse action. If you consider the totality of the circumstances here, look at all the evidence together of how they're trying to dissuade everybody, and given that Mr. Marin was very powerful at Evans Fruit and that he had engaged in bad behavior towards these plaintiffs in the past, that would be enough to scare a reasonable person from participating in protected activity. So I think that the surveillance by itself would be enough, Your Honor. And I see that I'm out of my time. Thank you very much. Thank you. May it please the Court, good morning. My name is Sarah Wixon, arguing on behalf of Evans Fruit. I'm dividing my time with Rob Case, who's going to argue issues of agency and conspiracy. I understand the Court has some concerns about whether we should be here today on Rule 54B. There is a distinction. And I know the Court also pointed us to two cases, and I'm a contrarian. I chose a different case to talk to you about. The difference in this case is an issue of fact versus law. Aguila has direct evidence. His issues will be an issue of fact for a jury to determine whether he's telling you the truth or telling the jury the truth. The issues we face here today are largely issues of law. They're evidentiary issues. And you don't even get to the trier of fact until we decide what goes before them. And the case that kind of talks about the divisions between law and fact is the Continental Airline versus Goodyear Tire and Rubber. It's an interesting case about a plane that landed and the wheels on the front gave way. And it sparked and it caught the wing on fire and it melted the evacuation ladder. The manufacturer of the tires on the front had an exculpatory clause. Complex case, they let them out on 54B because their issues were legal and the other issues were largely factual. We think that the Court did not err in certifying at least the nine claimants that my client is interested in for appeal. With that, I'll turn to the merits. The practical import, though, is if we determine there is no jurisdiction, then that nine-summary judgment will just sit tight until Mr. Aguila. That's correct. And as far as Evans Fruit is concerned, there's very little that's going to happen under the trial that's going to impact when you see us again. But I know that EEOC says, well, there is an issue as to Mr. Morin and his status and agency and what he can do. What is your thought on that, your comment? I think there may be some truth to that, and I'm going to let Mr. Case speak fully to his client. But I think there may be some distinctions. That's true. So this case is a grand summary judgment, and we have to assume that all the facts that they assert are true. But it has to be facts. They present a story of power, violence, sex, and even murder. These are based on conclusory allegations, speculation, and inadmissible evidence. Each plaintiff has to present specific and admissible facts to prove their claim of retaliation. Courts do not presume missing facts. So what are the facts here? First, we have this meeting in a public library. A brief common presence in a public location is not surveillance, nor is it retaliation. And the more complicated part of this case, I think, is the threats. The claimants also assert that they were threatened. There was a statement from Alberto Sanchez to Aguila that they knew who was in attendance at the library. The other nine claimants learned of this threat indirectly, and that was not serendipitous. Counsel put those nine people in a room and told them, you have been threatened. And then claimed attorney-client privilege. And then claimed attorney-client privilege, the result of which the district court said there will be no evidence whatsoever to prove that the other plaintiffs ever experienced or knew about the threats supposedly made against them. They have to prove an adverse impact to them, and this is an impediment to proof in the trial. May I ask you about Mr. Ambrosio? Because in one of these Sanchez-Aguila phone calls, I thought he was there, and he's hearing all this. Absolutely. Is he similar to Mr. Aguila? He kind of is, and he kind of isn't. That was not raised at all in the multiple briefings we had until the court raised it. It just seemed to me factually an issue. It is. The court raised it sua sponte. The district court raised it sua sponte. And referred back, he says, I have no idea why people didn't raise that as a verbal act. And then he posits, well, it could be that at the preliminary injunction hearing, Mr. Ambrosio Morin specifically testified when asked, have you ever heard Alberto Sanchez threaten anyone? Or I guess it was a statement, you have never heard him threaten anyone, and he says, correct. And so the district court says, I have to take him at his word that he never heard anybody threaten him. And maybe that's why plaintiffs treated him differently. So, you know, the record's not completely clear on that, but I think the district court had a reason for treating that differently. Even though he was part of that phone call, the district court said your own testimony said you did not perceive that as a threat. Therefore, under the standards of intimidation, that solves that problem. And you can't create a fact by having inconsistent statements. So with regard to the hearsay, it's such an easy rule to say and such a difficult rule to apply. An in-court statement offered for the truth of the matter asserted. And when you have multiple layers of hearsay, each one of them has to meet a separate exception. And that is because when you have successive statements, they are inherently untrustworthy, like that telephone game that the children play. One person whispers in someone's ear, they say, peanuts. And it comes out something completely different on the other end. This filter is inaccurate. And so the rule requires that every step of the way has some sort of exception. So rather than talk about it in the abstract, I'm going to take one claimant. I'm going to run through the steps and kind of walk through why verbal act of AGULA, which is completely admissible, does not get you to retaliatory conduct downstream. So Sanchez says, I know who participated and I'm going to get you. He said that to AGULA. He said that to AGULA. He says that to AGULA. Verbal act, it is definitely not for the truth or the false. Is it true? Is it false? It doesn't matter. He says that to AGULA. AGULA tells, let's take Aurelia Garcia, for instance. She heard through her lawyer about the threat. He tells counsel, I heard Sanchez say that we were threatened. Is it true? Is it false? I heard Sanchez say, that's truth. And then counsel says to Mrs. Garcia, I heard AGULA say, Sanchez said, that you're going to be threatened. Two truths. And then we get to Aurelia Garcia and you say. When you say two truths, you mean two statements that would only be useful if you could rely on them for the truth of the statement made. Correct. Not that they were, in fact, true statements. Correct. But the truth is an essential requirement before those statements could come in. Correct. You've got the true-false toggle. Is it true? Is it false? Why would you have to have it be a true-false? Let's say if I were all sitting in the courtroom and I say, you know, I think there was a bomb in the courthouse. And you hear that. And you walk out and there's some other people out there. And I say, you know, I suppose we ought to leave. Then you go out there and you see some people that haven't been in the courtroom and you say to them, she said there's a bomb in the courthouse. It doesn't really matter whether it's true or false, is that if there is an act on which they could take action, in the same way the employees could say, if I think he's going to get me, I'm not going to talk to the EEOC anymore. I don't know if it's true or not he's going to get me. I don't know if it's true or not there's a bomb in the courthouse. So why isn't that the same thing? It is different because you're talking about effect or notice, and that's the why. We don't want to know what happened. We want to know whatever you did, why was there a reason for you to do it. So if, and we see cases, so if Aurelia Garcia was threatened and then thought, oh, my gosh, I'm going to, she quits her job, right, that's the effect. But for here, the underlying purpose of the communication is the fact that she has been threatened. So there's a truth there. So that makes it distinguishable from the notice and effect cases because you need to see. You need to have a threat, a substantive threat, in other words, that you think has to hinge on a truth. It has to be. To be materially adverse, there has to be a threat. And otherwise, effect or notice is immaterial because it's an object of standard. So I think... Or response is immaterial because first you have to, we're testing with how a reasonable, not a subjective, but how a reasonable person would respond. If you don't have something in evidence for a reasonable person to respond to, it doesn't matter how this particular person might have responded. Right. And here... But here you would have two people removed, right? Right. You have, Mr. Argulia tells the lawyer who now won't come in and testify, and then the lawyer tells the client. Right. And the appellants want to argue that just the threat itself is enough to get them there. And that makes, they liken it to criminal statutes where only uttering the threat is, that's the liability. But that's not Title VII. Retaliation in and of itself is not illegal. It has to be objectively, materially adverse. So that makes it different from, say, 18 U.S.C. Section 115 where you just, if I step outside and I threaten your honors, and I'm not going to, that I can go to jail regardless of if you had... That's right, I saw that. So that's why the statements are hearsay. The court did not abuse its discretion. The court did not make a... in that regard. And that's why we can't have... There are instances in which someone could utter a threat, it would pass to an agent. There are instances where you could argue, it wasn't argued, but somehow if I told my legal assistant to go threaten someone, she's my agent, that's not hearsay because you have step to step to step. But we don't have that here. The next issue I'd like to talk about is character evidence versus context. We saw it in the sexual harassment case, we see it here, is that appellants want to aggregate everyone's experiences. We have claimants that haven't worked at Evans Fruit for 20 years. And there's this whole series of bad, alleged bad acts, allegedly Juan Marin did, that have nothing to do with that individual claimant. The assertion that Juan Marin is a dangerous and powerful man and that threatening the individuals is entirely consistent with the use of that power, that is quintessential character evidence. He's a bad man, of course he would do bad things. For context, I would urge this court to look at it as an individual inquiry. What did each individual person experience? That was what the jury was asked to do. Oh, not in your case. Not in my case. You're right. Hopefully we don't get there. In this case, counsel has also not only... And we should be clear that the plaintiffs in the other case don't overlap completely with your case. They do not. They do not. There's a common subset, but then some additional players. The context was constructed by counsel largely by putting these people in the same room and sharing their experiences. It has to be an individual assessment. You can't take all 20 claimants and have them share their stories and then say, well, we had good reason to be afraid because someone's daughter was murdered, and now I'm terrified. One, that's not retaliation. Fear is not retaliation. It has to have a basis in fact. But it has to be their context. And I know we're far removed from the employment context, but at least it has to be their context in their daily life. And we simply don't have that. Elodia Sanchez, the proximity argument wasn't raised in the court below. There's not a lot of discussion about that. But the adverse action has to be tied to your protected activity. So the fact that her paramour was threatened, I don't see how this doesn't connect to Ms. Sanchez. I don't know exactly how to address that. It wasn't raised before the court below under that specific exemption. U.S. v. Chang says if you don't raise an evidentiary issue specifically, you don't get to raise it on appeal just because you don't have an adequate record. If there's anything the court would like. Thank you. Thank you very much. May it please the Court, my name is Daniel Case. I'm counsel for Juan Marin, the defendant in the demeanor. I'd like to start with where my opponent, Ms. Blanca, started. She said she was going to make four points, and the first point she asserted was that a verbal act is a verbal act no matter who offers it. That's not true. The two most on-point precedents cited by all the parties in this case tell us it's not true. That is the Fifth Circuit decision of U.S. Information Systems and the Washington Supreme Court case of Dunlap v. Wayne. In U.S. Information Systems, the relevant quote is that, Mr. Penney's repetition of Patrick Marshall's statement about the shop steward's threat is hearsay because the information is based entirely on Mr. Marshall's statement. The plaintiffs contend that the threats attributed to the shop steward are verbal acts and hence not hearsay. They are correct that the threats are not hearsay, and then there's a cite to another case, and if Mr. Penney had received the threats himself, he could have recounted them, but he was not the recipient, end quote. So when it's not the recipient trying to offer somebody else's comments, you don't get to use verbal act multiple times. That was a threat case. In the Washington Supreme Court case, the Wayne v. Dunlap is not a threat case, but it's another type of verbal act case. It's a defamation case. And in that case, the Washington Supreme Court said, even if Wayne's alleged out-of-court oral defamatory statement is itself admissible, the plaintiff cannot introduce it by repeating the bank president's out-of-court statement, end quote. Those are the two cases that speak directly to if it's a verbal act, does it always stay a verbal act and can be repeated ad infinitum, and they say the exact opposite of what my opponent is asking this court to rule. I would now move on to conspiracy and the fact that the law says there has to be some independent proof of the purported conspiracy. This also speaks to the agency. The same Rule 801, same last sentence of it, says you can consider the purported conspirator or purported agent's comments. You can consider those, but there has to be something more. There has to be something in addition. My opponents in this case say they have some independent evidence, but it's completely unlike the true independent evidence of the case they cite, Bridgeforth. In Bridgeforth, an informant wanted to buy drugs. He meets somebody on the street, says, can you get me the drugs? The second person says, yes, I can. Let me page somebody. Pages, that somebody shows up. The informant says, there he is. Then all three of them in the same car or nearby, the supplier standing outside, do the drug deal. The informant hands the money to the second person, sees the second person, hands it to the third person. Then the second and the third leave, go to the house, come back with the drugs. That's independent evidence because it's actual in concert action. Physical, kinetic, same place, same time action between the supposed conspirators. Here they don't have that. Here all they have out of my client to try and establish the supposed conspiracy is that he said Mr. Sanchez's name supposedly one time on the telephone. He said it one time, if you believe, as you have to for summary judgment, the facts in their most favorable light to the plaintiff. But the plaintiffs themselves admit that during that conversation, that's February 12th, two days after the library, they admit that my client made no threat. And the citation that proves that, it's in the court's order on reconsideration. It's in the intervener's excerpts of record, page 25, where the trial court said, and they do not challenge us on appeal, trial court said, quote, plaintiffs do not contend this statement by Mr. Wren constitutes a threat in itself, end quote. All he said was have you spoken to him, not have you spoken. Who is making that statement? That's the trial court. It was the trial court that said that. Summarizing what the plaintiff's position below was, and the plaintiff has not said, you know what, the trial court got my position wrong. All the plaintiffs have is my client saying have you spoken to Mr. Sanchez, not have you spoken to him about X, Y, and Z, not have you spoken to him because he's speaking on my behalf, just have you spoken to him. These were all workers at the same ranch. The record reflects that my client, Mr. Wren, and Mr. Sanchez also, they have rentals. And Gregorio Aguila, the regulator of all this, he was basically a layperson's type contractor that had done construction work for each of them. So it's an equally plausible explanation rather than this theory of, well, he mentioned his name so that makes him a conspirator, that he just said have you talked to him because I know he wants to speak to you. That's not independent evidence. It's certainly not like Bridgeforth, the case we're trying to rely upon. The standard, of course, in this case comes from Burlington Northern. It's a little bit different under Washington law. The reason it's different under Washington law is the Trezuto decision from the Western District of Washington confirms that Washington courts have never adopted the federal definition of adverse action. There's a difference. In Washington, there has to be an empirical, tangible change in the person's circumstance. Not just that you got threatened, but your circumstance changed somehow. You lost your job. You lost your benefits. Something happened. Or in the credit union case, Galbraith v. Tapco Credit Union, the guy's account was canceled. Something changed there. There's never been a decision under the Washington law against discrimination where there was no tangible change in circumstance, but people who are no longer even working at the company are still allowed to sue, including Mr. Ramos who hadn't worked there a couple of decades. But the standard mostly comes from Burlington Northern. There has to be an objective finding of an adverse impact. And what does my opponent say? Fear, fear, fear. That's not an objective finding. That's subjective. And what are we trying to get the court to focus on and what do we get the trial court to focus on? Okay, objective impact. Objective from what? Here we don't know because it's under lock and key, attorney-client privilege. I was impacted. Take my word for it because I'm not going to tell you what I actually heard that impacted me. That doesn't work. There's no precedent where that's ever been allowed. As to CR 54B, because I've got 30 seconds left, I submit there is no basis, there's no reason. First of all, I didn't brief this because my opponent didn't brief it. My opponent doesn't even make the argument. But there's no reason to delay the adjudication of this appeal as to Mr. Morin. All claims advanced against Mr. Morin have been dismissed. All plaintiffs against him have lost. He should not have to wait to get his finality until different litigants sort out things among themselves. But they had suggested that somehow the agency question in Morin is going to pop back up in Aguila. It's going to pop up in a different way. The question at trial for Mr. Aguila B. Evans-Fruit will be, among other things, is Morin an agent of Evans-Fruit, different than is Sanchez Morin's agent or is Sanchez Morin's co-conspirator? They have to prove something extra to get my client on the hook versus what they have to prove to get Evans-Fruit on the hook. There's no reason to delay my client getting an affirmance as to dismissal of all ten plaintiffs because one plaintiff might get a different defendant to be liable. Well, I see your time is up. Go ahead with your question. I'm troubled still by their standard about that they have to be functionally separate. I can see that legally Morin would say, look, I'm going to be off the hook if you can resolve this appeal. But factually, the underlying transaction is similar to the underlying transaction that Aguilar would testify about. Yes, they are similar. So the jury could do one of two things if Aguila's trial against Evans-Fruit happens, roughly one of two things. They could either say Sanchez wins or Sanchez loses. Excuse me, Aguila wins or Aguila loses. Whichever one of those occurs doesn't impact the case against Mr. Morin. It just doesn't because if he loses – That's a legal separation. My question to you is I thought that the test was not just legal separation but factual distinction as to separation. I believe that's right, but I'll profess some of my ignorance on that because, again, I didn't brief this because my opponent didn't argue it. So I've looked at it a little bit in the last few days prepping for this, but I don't have something to go further upon that comment there. Thank you. Thank you. Okay. Any some rebuttal time? How much is left? There's none. Did they use all their time? Okay, I'll give you a minute and rebuttal then. How much do I have? She says that appellants have used all their time. But I'm giving you some time. Oh, thank you. Thank you. I guess the main thing I'd like to focus on then is the question of proof. We prove our case with Aguila. We don't need to prove. We, EEOC, we put Aguila on the stand. Did you hear a threat? Yes, I did. Did it extend to all the people who were at the meeting cooperating with us? Yes, it did. We prove our case. Do you think that's enough? You think an uncommunicated threat to somebody could support a retaliation claim? Well, it certainly would. Yes, we do. And the fact is that three people asserted the attorney-client privilege. That's true. There are nine people who were dismissed. Several of them heard it directly from Aguila, like Elodia, like Ambrosio. Ambrosio told his cousin Cirillo, they know that they're in a unique group because we know what we're going to do to them, was the threat with respect to them. I understand this, and we think the subjective aspect of the objective test for retaliation, I mean, why did these people, why did the people, for example, why did Mendoza and Ramos put outdoor lighting, motion-detecting light on their house? Because they were afraid. They heard about the threat, and they were afraid. Why does Valdez check? Why does she have nightmares? Why does she check the backseat of her car every time she gets in it? Because she's afraid. They heard about these things. They talked about them at meetings. They had an impact on them. Isn't the test whether it would chill an ordinary person? In the plaintiff's position. Right, not the subjective of whether you particularly responded, but what would an ordinary person do? A reasonable person in the shoes of the plaintiff. So you have to, there's a subject element about it. I mean, they made that very clear. And I wanted to mention Rochon is a case. I think your time is completely expired. We've been pretty generous. I'm sure you all have a lot more to say because I know the trial went on for quite a long time. But fortunately here in the Court of Appeals, we do have some time limits. So I do appreciate the argument of all counsel here. EEOC versus, and Garcia versus Evans-Fruit and Marin are submitted. Thank you, everyone, and we're now adjourned for the morning. I'd just like to add to Judge McGoon's statement. I do appreciate the professionalism of the arguments today. I'm appreciative of how you all handled it. Thank you. And I also concur. Thank you.
judges: O'scannlain, Ebel, McKeown